IP WORKS, PLLC
Catherine A. Cavella, Esq. (PA Bar No. 209040)
196 W. Ashland Street, Suite 101
Doylestown, PA 18901
Tel: (215) 348-1442
Email: CCavella@ipworkslaw.com
*Attorneys for Plaintiff, Highpoint Law Offices, P.C.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
CASE NO. 25-cv-02308

HIGHPOINT LAW OFFICES, P.C., a Pennsylvania professional corporation,

          Plaintiff,

vs.

HIGHPOINT LAW OFFICES, LLC, a Wisconsin limited liability company,

          Defendant.

## COMPLAINT

      Plaintiff HighPoint Law Offices, P.C. ("Plaintiff" or "HighPoint") brings this action against Defendant HighPoint Law Offices, LLC ("Defendant" or "HP Collects") for: (1) common law trademark infringement; and (2) common law unfair competition. These claims arise from Defendant's knowing infringement of Plaintiff's trademark rights in the marks HIGHPOINT and HIGHPOINT LAW OFFICES (together, the "HIGHPOINT Marks") in connection with legal services. Defendant was, or should have been, aware of Plaintiff's use of and rights in the name, and nonetheless proceeded to infringe on these rights. Plaintiff, an estate planning law firm that prides itself on its reputation and the trust of its clients garnered through years of meticulous care, is now being wrongly associated with HP Collects, whose business model operates contrary to the values of Highpoint and whose reputation is far from stellar. Worse, Plaintiff is now fielding almost

1

daily calls, letters, and emails from individuals and other organizations seeking out HP Collects, and has even received numerous payments from parties seeking to pay HP Collects, all of which have forced Plaintiff to expend time and resources refunding improperly made payments and explaining that these parties are contacting the wrong firm.  Defendant's willful infringement of Plaintiff's rights and deceptive use of the HIGHPOINT Marks are the precise conduct that trademark and unfair competition law is intended to prevent.  Accordingly, Plaintiff seeks both monetary damages and injunctive relief in this Complaint, and alleges as follows:

## The Parties

1. Plaintiff, HighPoint Law Offices, P.C. is a professional corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 200 Highpoint Drive, Chalfont, Pennsylvania 18904.

2. Defendant, HighPoint Law Offices LLC is a limited liability company organized and existing under the laws of the State of Wisconsin, with its principal place of business located at 13890 Bishops Drive, Suite 450, Brookfield, Wisconsin 53005.

## Jurisdiction

3. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), in that Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00.

4. This Court has personal jurisdiction over Defendant because it has directed tortious activities toward the Commonwealth of Pennsylvania and established sufficient minimum contacts with Pennsylvania by, among other things, knowingly causing harm and tortious injury to HighPoint in Pennsylvania.

5. Defendants' activities in Pennsylvania are significant and ongoing, as Defendants' use of Plaintiff's name and trademark continues to confuse consumers in Pennsylvania; continues to force

Plaintiff to expend time and resources fielding calls, emails, and payments from confused consumers and affiliates in Pennsylvania; and continues to damage Plaintiff's reputation and goodwill in Pennsylvania.

6. As a result of the aforementioned, as well as Defendant being aware of Plaintiff's trademark rights and business location in Pennsylvania since at least December 6, 2024 and its continuance of use since then, Defendant should reasonably have anticipated this litigation taking place in Pennsylvania.

## Venue

7. Venue is proper in this Judicial District because a substantial part of the events giving rise to the claims made and damages alleged herein occurred in this Judicial District, and it is also the Judicial District in which Plaintiff's principal place of business is located.

## Statement of Facts

### HighPoint Law Offices and its Trademark Rights

8. HighPoint Law Offices PC was established in 2005 by Peter J. Gilbert, Esq. ("Gilbert"), following 17 years of service in pastoral ministry.

9. Attorney Gilbert's ministerial service provided him with the desire and background to form a law firm with pillars of respect, compassion, empathy, and honesty serving as the foundation.

10. Such values are essential in the legal field of estate planning, as HighPoint's clients entrust HighPoint with not only their own futures, but also with the futures of their loved ones in the events of death, incapacity, guardianships, nursing home crisis planning, dementia, and more.

11. Over the course of 20 years since HighPoint was established, the Highpoint team has developed a reputation for upholding these values and serving their clients in accordance with the same.

12. This has earned HighPoint the trust of clients across the country.

13. The firm prides itself on not having a single ethical complaint or malpractice suit against it, and even having near-perfect online reviews.

14. HighPoint's reputation and the trust of its clients are paramount to the firm's business model and 20 years of success.

15. In conjunction with these 20 years of success, HighPoint has developed common law trademark rights, not only in Pennsylvania and the surrounding states, but across the country.

16. Indeed, HighPoint has used its mark in conjunction with services performed on behalf of clients from Indiana, Washington, Florida, Virginia, Massachusetts, Pennsylvania, and the surrounding states, which overlap and neighbor states that HP Collects claims to provide services in.

17. Additionally, HighPoint is a member of several national organizations such as The National Academy of Elder Law Attorneys, The National Alliance of Attorneys for Alzheimer's Planning, and The Academy of Special Needs Planners, each of which is a national referral and resource service, as well as a means of marketing the HighPoint brand throughout the United States. Finally, HighPoint is also a member of Wealth Counsel and its nationwide community of attorneys who collaborate, share knowledge and refer business to other members.

18. HighPoint's multistate client-base, membership in national referral groups and organizations, consistent and clear marketing nationwide vis-a-vis the same, and its continuous use in commerce are such that the general public identifies the term HighPoint as a trademark indicating HighPoint as the source of its services.

19. Further, on October 24, 2024, Highpoint submitted its application for federal registration for the trademark HIGHPOINT in Class 45 for "Legal services" and in Class 41 for "Workshops and seminars in the field of estate planning," with a date of first use in commerce of July 31, 2005.

20. The trademark application is currently awaiting assignment to an examiner; however, Highpoint anticipates that it will move to publication without issue in the upcoming months.

### HP Collects and its Reputation

21. Upon information and belief, HP Collects was organized as Highpoint Law Offices, LLC on November 21, 2023, but did not become operational until mid-2024. Due to the Defendant's use of an identical name, Defendant shall be referred to as HP Collects herein.

22. HP Collects, presumably after finding that the domain name [www.highpointlawoffices.com](www.highpointlawoffices.com) was already taken by Plaintiff, acquired the domain name [www.HPCollects.com](www.HPCollects.com).

23. Despite the domain name, Defendant's website shows that it clearly uses the name HighPoint Law Offices, LLC in violation of Plaintiff's trademark rights.

24. In the mere months since becoming operational, HP Collects has already managed to generate a reputation of using intimidation tactics and a forceful approach.

25. HP Collects tactics, reputation, and area of law are such that other law firms are beginning to market themselves as advocates to those entangled with HP Collects.

26. One such firm, the Fullman Firm based in Santa Ana, California, has an entire section of its website dedicated to the task, entitled "Protect Your Rights Against HighPoint Law Offices, LLC"

27. The website continues, "HighPoint Law Offices, LLC is a law firm known for its aggressive approach in debt collection and legal enforcement. They represent creditors and debt buyers, often employing high-pressure tactics to recover debts."

28. The fact that a law firm like the Fullman Firm has encountered so many people seeking assistance in dealing with HP Collects' tactics and sees value in marketing its abilities to aid in dealing with HP Collects' aggressive high-pressure tactics speaks for itself.

29. Further, as discussed below, not only has HighPoint been fielding calls and emails directed to HP Collects, but a number of those calls and emails have been revelatory as to the reputational harm being caused by HP Collects' use of HighPoint's mark. For example, there has been a complaint made to the California Department of Justice about HP Collects, individuals believing that HP Collects is trying to defraud them, individuals alleging that HP Collects has wrongfully withdrawn funds from their bank account, and an attorney who claimed to have brought multiple legal action against HP Collects.

30. Both collectively and in each individual instance, an affiliation with such conduct is harmful to any brand and is even more so when the brand that HighPoint has spent years developing is built on trust, care, compassion, and empathy.

**Actual Confusion**

31. Since HP Collects began using HighPoint's name, HighPoint has suffered significant reputational harm, has spent time and incurred expense remedying actual confusion between the entities, and has been repeatedly rebuffed by HP Collects in efforts to resolve this matter without litigation.

32. Due to the different natures of their respective fields of law and approaches to brand protection, reputational conflict is unavoidable.

33. As stated above, a client seeking estate planning services is seeking peace of mind that his or her wishes will be carried out in the event of illness, incapacity, or death. Placing the control of their futures in the hands of a law firm is a decision not taken lightly and requires levels of trust well beyond most professional relationships. Therefore, HighPoint's reputation, whether it be through word of mouth, online, or otherwise, is paramount to its success and continuation as a going concern.

34. In contrast, HP Collects clients, namely, those seeking assistance in collecting debts, are motivated by the bottom line. HP Collects' success is not measured by trust and compassion, but by effectiveness in getting debtors to pay by whatever means necessary (which is not to say there is anything unethical or illegal about its practice).

35. Comparing the natural reputations of each firm in each industry shows an inevitable harm to HighPoint. While HP Collects' clientele – an individual or entity seeking payment on a debt – would be drawn to a firm known to be aggressive or forceful, a family seeking to find counsel to draw up documents that determine the fate of their estate after they pass would avoid counsel known to be aggressive, "high-pressure," or abrasive. While HP Collects' success for its clients results in money being collected from another, a family seeking to prepare for incapacity would find success in the comfort of knowing that their counsel exercises care and compassion in its daily practice. Thus, a potential estate planning client who searches the internet for HighPoint Law Offices and finds another law firm dedicated to "dealing with HighPoint Law Office['s]" "aggressive" approach or "high-pressure tactics" is certain to seek out other counsel.

36. Unfortunately for HighPoint, this confusion is not merely hypothetical and has manifested on dozens of occasions in the months since HP Collects started operating using the name.

37. Almost immediately upon HP Collects becoming operational in mid-2024, clients and adversaries of HP Collects began confusing the two entities.

38. On July 5, 2024, the California Department of Justice mistakenly sent HighPoint notice of a claim filed on June 25, 2024 as against HP Collects alleging fraudulent conduct.

39. On July 17, 2024, an individual called HighPoint seeking to verify a call received from HP Collects requesting her social security number and address, as it seemed fraudulent,

40. On July 23, 2024, an individual contacted HighPoint through its website chat feature, seeking clarification about a check received from HP Collects.

41. On August 6, 2024, an individual called HighPoint in relation to money allegedly withdrawn from her bank account by HP Collects.

42. On August 8, 2024, an entity representing an individual debtor emailed HighPoint regarding an agreement with HP Collects to catch up on back-payments.

43. On August 15, 2024, an individual called HighPoint on behalf of her elderly mother in relation to a collections call received from HP Collects.

44. On September 4, 2024, an individual called HighPoint seeking to make a payment toward a debt being collected by HP Collects.

45. On September 6, 2024, an attorney called HighPoint seeking to discuss a client of HP Collects. Said counsel also alleged that he had brought multiple legal actions against HP Collects for illegal debt collection practices and identity theft.

46. On September 20, 2024, an individual called seeking to speak with a specific employee of HP Collects.

47. During the week of September 23, 2024, at least four individuals called HighPoint seeking to reach HP Collects.

48. On October 1, October 7, twice on October 11, and October 12, 2024, individuals called HighPoint seeking to reach HP Collects.

49. In addition to phone calls, HighPoint received emails or documents intended for HP Collects on (at least), October 28 (twice), October 29, November 6, November 12, November 15, November 18, November 25, November 26, November 27, December 2 (twice), December 5, December 17, 2024 and January 2, January 10, February 11, February 21, March 11, March 12, March 18 (twice), March 28, and April 4, 2025.

50. In addition to calls and emails, HP Collects' clients have made payments through HighPoint's online payment portal, and on January 23, 2025, after numerous adversaries/debtors

represented by the same national law firm submitted payments mistakenly through HighPoint's online payment portal that were intended to go to HP Collects, an attorney from HighPoint was forced to contact the national debt relief firm, only to learn that the debt collection firm itself – not its clients – had made the error and was directing its own clients to make payments through HighPoint's portal.

51. On each occasion, HighPoint was forced to spend time and resources redirecting these individuals or entities to the correct law firm.

52. Worse, if individuals and entities already embroiled in disputes with HP Collects are mistaking it for HighPoint, there can be no doubt that parties seeking out sensitive legal services such as those offered by HighPoint are mistaking the negative online discussion of HP Collects for discussion of HighPoint, likely resulting in tens of thousands of dollars of lost business every month.

### HP Collects Infringement is Willful

53. As stated, HP Collects formed as an entity in November 2023, and upon information and belief, was formed following a rebranding forced by a previously soiled reputation in its industry.

54. At that time, any reasonable business, let alone a licensed attorney, would or should have researched the availability of a name and whether or not there was cause for concern of trademark infringement. Even a cursory internet search for the proposed name would have led HP Collects directly to HighPoint's website, placing it on notice of HighPoint's prior rights.

55. Further, upon information and belief, HP Collects registered the domain name HPCollects.com on or about December 7, 2023. Upon further information and belief, it would have been made aware of HighPoint's prior rights as it presumably first sought out a domain name that matched its business name, or highpointlawoffices.com, but that was already taken.

9

56. Finally, on or about December 6, 2024, HighPoint, through counsel, sent HP Collects a cease-and-desist that explained the various rights and harms alleged herein, which represents the latest date upon which HP Collects' infringement could have become willful.

57. Nonetheless, despite the cease-and-desist and follow up conversations between HighPoint's counsel and HP Collects' principal, HP Collects' infringement continues.

## AS AND FOR ITS FIRST CAUSE OF ACTION
### (Common Law Trademark Infringement)

58. HighPoint hereby realleges and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

59. HighPoint was the first user of the HIGHPOINT Marks in association with a legal practice and the affiliated services therewith.

60. Through nearly two decades of continuous use of the marks HIGHPOINT and HIGHPOINT LAW OFFICES across the country, HighPoint has obtained common law trademark rights in the terms.

61. As pleaded above, due to HighPoint's multi-state clientele, membership in and marketing through national organizations, and its continuous use in connection with the same, the geographic scope of its trademark rights includes the territories in which HP Collects operates.

62. HighPoint's common law trademark rights are valid and enforceable.

63. HP Collects willfully and knowingly used, and continues to use, HighPoint's trademarks in commerce for the purposes of legal services without the consent of HighPoint.

64. HP Collects' use of the HIGHPOINT Marks in connection with legal services has caused and will continue to cause confusion and mistake, or deceive customers because it falsely suggests that the services offered by HP Collects are the same as, originate from, are authorized by, or are sponsored by HighPoint.

65. HP Collects' use of the HIGHPOINT Marks in connection with legal services has caused and will continue to cause confusion and mistake, or deceive because it suggests the services offered by HP Collects are being offered by HighPoint.

66. HP Collects' services rendered with the HIGHPOINT Marks are materially different from HighPoint's services, and as a result, have damaged and will continue to damage the goodwill and reputation of HighPoint.

67. HP Collect's unauthorized use of the HIGHPOINT Marks, and HighPoint's inability to control the quality of the services rendered in association with the marks has damaged and is damaging the goodwill and reputation of HighPoint.

68. HP Collect's unauthorized use of the HIGHPOINT Marks has materially damaged the value of HighPoint's trademarks, caused significant damage to HighPoint's reputation and business relations, and infringed on HighPoint's trademarks.

69. As a proximate result of HP Collects' infringement, HighPoint has suffered and continues to suffer monetary expense, damage to its business, goodwill, reputation, and profits, all in an amount to be determined at trial, but not less than $150,000.00.

70. HighPoint is entitled to recover its damages caused by HP Collects' infringement of HighPoint's trademarks and disgorge HP Collects' profits from its willful infringement and unjust enrichment.

71. HighPoint is entitled to injunctive relief because it has no adequate remedy at law for HP Collect's infringement and unless HP Collects' is permanently enjoined, HighPoint will suffer irreparable harm.

72. HighPoint is entitled to enhanced damages and attorneys' fees because HP Collects willfully, intentionally, maliciously, and in bad faith infringed on HighPoint's trademark.

## AS AND FOR ITS SECOND CAUSE OF ACTION
### (Common Law Unfair Competition)

73. Highpoint hereby realleges and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

74. HighPoint was the first user of the HIGHPOINT Marks in association with a legal practice and the affiliated services therewith.

75. Through nearly two decades of continuous use of the HIGHPOINT Marks across the country, HighPoint has obtained common law trademark rights in the name.

76. As pleaded above, due to HighPoint's multi-state clientele, membership in and marketing through national organizations, and its continuous use in connection with the same, the geographic scope of its trademark rights includes the territories in which HP Collects operates.

77. HighPoint's common law trademark rights are valid and enforceable.

78. HP Collects willfully and knowingly used, and continues to use, the HIGHPOINT Marks in commerce for the purposes of legal services, without the consent of HighPoint.

79. HP Collects' use of the HIGHPOINT Marks in connection with legal services has caused and will continue to cause confusion and mistake, or deceive customers because it falsely suggests that the services offered by HP Collects are the same as, originate from, are authorized by, or are sponsored by HighPoint.

80. HP Collects' use of the HighPoint mark in connection with legal services has caused and will continue to cause confusion and mistake, or deceive because it suggests the services offered by HP Collects are being offered by HighPoint.

81. HP Collects' services rendered with the HIGHPOINT Marks are materially different from HighPoint's services, and as a result, damage the goodwill and reputation of HighPoint.

82. HP Collect's unauthorized use of the mark, and HighPoint's inability to control the quality of the services rendered in association with the HIGHPOINT Marks has damaged and is damaging the goodwill and reputation of HighPoint.

83. HP Collect's unauthorized use of the mark has materially damaged the value of HighPoint's trademarks, caused significant damage to HighPoint's reputation and business relations, and infringed on HighPoint's trademark.

84. As a proximate result of HP Collects' infringement, HighPoint has suffered and continues to suffer monetary expense, damage to its business, goodwill, reputation, and profits, all in an amount to be determined at trial, but not less than $150,000.00.

85. HighPoint is entitled to recover its damages caused by HP Collects' infringement of HighPoint's trademarks and disgorge HP Collects' profits from its willful infringement and unjust enrichment.

86. HighPoint is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for HP Collect's infringement and unless HP Collects' is permanently enjoined, HighPoint will suffer irreparable harm.

87. HighPoint is entitled to enhanced damages and attorneys' fees because HP Collects willfully, intentionally, maliciously, and in bad faith infringed on HighPoint's trademarks.

## **PRAYER FOR RELIEF**

WHEREFORE, HighPoint prays for relief and judgment as follows:

A. Judgment in favor of HighPoint and against HP Collects in an amount to be determined at trial, including, but not limited to compensatory damages and enhanced damages, including disgorgement of profits, and pre-judgment and post- judgment interest, as permitted by law;

13

B. Permanent injunctive relief enjoining HP Collects and any agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

　　i. Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all services bearing the HIGHPOINT Marks;

　　ii. Prohibiting the Enjoined Parties from using any of the HIGHPOINT Marks in any manner, including on the internet;

　　iii. Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' website(s) any reference to any HIGHPOINT Marks;

　　iv. Requiring the Enjoined Parties to take all action, including, but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the HIGHPOINT Marks which associate HighPoint's services or the HIGHPOINT Marks with the Enjoined Parties or the Enjoined Parties' websites;

　　v. Requiring the Enjoined Parties to take all action to remove the HIGHPOINT Marks from the Internet; and,

　　vi. Requiring the Enjoined Parties to destroy all materials bearing the HIGHPOINT Marks in their possession, custody, or control.

C. An award of attorneys' fees, costs, and expenses.

D. Such other and further relief as the Court deems just, equitable, and proper.

## **Jury Demand**

Pursuant to Rule 38 of the Fed. R. Civ. P., HighPoint demands a trial by jury on all issues so triable.

Dated: May 6, 2025  
Doylestown, Pennsylvania

Respectfully Submitted,

By: /s/Catherine A. Cavella  
Catherine A. Cavella, Esq.  
PA Bar No. 209040  
IP WORKS, PLLC  
196 W. Ashland Street, Suite 101  
Doylestown, PA 18901  
Tel: (215) 348-1442  
Email: CCavella@ipworkslaw.com  
*Attorneys for Plaintiff, Highpoint Law Offices, P.C.*